UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                      No. 1:16-cr-04574-JCH-1

NICHOLAS WIGGINS,

        Defendant.


## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S AMENDED MOTION TO SUPPRESS EVIDENCE

**THIS MATTER** is before the Court on Defendant's Amended Motion to Suppress Evidence [Doc. 37]. The Court held a hearing on the motion on March 13, 2018. The Court, having considered the motion, briefs, evidence, arguments, and being otherwise fully advised, believes that the motion should be denied.

## I.    FACTUAL BACKGROUND

In support of his application for a search warrant, Bernalillo County Sheriff's Office ("BCSO") Detective Joseph Garcia's affidavit contained the following information.

In April and May 2016 a confidential informant ("CI") contacted Detective Garcia, and told him that it had first-hand knowledge that Defendant trafficked narcotics out of a home located at 10009 Range Road SW ("Range Road") in Albuquerque. Def.'s Ex. A. The CI told Garcia that Defendant owned a Cadillac, Range Rover and Mercedes, and that Defendant used these cars to conduct drug deals. *Id.* Garcia's affidavit provided background information about the CI, explaining that the CI had worked with law enforcement before, that it had provided

accurate information in the past, and that law enforcement had been able to corroborate minute details of the CI's information. *Id.* Garcia explained that the CI had never given him false information before and so he considered the CI's information accurate and true. *Id.* Garcia also noted that the CI was paid to provide information, and that the CI knew this arrangement would be jeopardized if the CI misled or lied to officers. *Id.* The CI could recognize drugs and was familiar with drug related activity. *Id.*

Following the CI's information, Garcia surveilled Range Road over two periods that were conducted within a two week time-frame, between May 3 through 17, and that were accomplished in essentially the same manner. *Id.* In the first surveillance, Garcia surveilled Range Road at least six times for an hour at a time. *Id.* In the span of an hour, he observed at least five vehicles arrive at Defendant's house. *Id.* The visitors would stay for about three to five minutes and then leave, carrying neither packages nor children with them. *Id.* Garcia noted that his experience and training led him to believe that this conduct was consistent with drug trafficking. *Id.* In the second period of surveillance of Range Road, conducted three days before Garcia sought the warrant at issue, Garcia observed Range Road for one hour and witnessed at least three vehicles arrive, and then leave within three to five minutes without packages or children. *Id.* In his affidavit Garcia described Range Road's appearance, location, and that the house's number "10009" was clearly marked. *Id.* Garcia also noted that he observed the three vehicles the CI described parked at Defendant's house. *Id.*

During this same period BCSO arranged for the CI to make a "controlled purchase" of heroin from Defendant. *Id.* As Garcia described in his affidavit, he listened in on a phone call between the CI and Defendant where they discussed an amount and price of heroin. *Id.* Before the controlled buy, Garcia searched the CI for contraband, and then covertly followed the CI to a

predetermined location where the drug deal happened. Garcia watched as Defendant arrived in a black Mercedes and complete a "hand to hand drug transaction" with the CI in less than five minutes. *Id.* The CI and Garcia then met at a separate location where the CI gave Garcia the suspected                                                                                          heroin.                                                                                          *Id.*

Detective Garcia stated in his affidavit that he used every effort to personally corroborate the details of Defendant's trafficking operations, using "specific observations such as controlled purchase(s) of narcotics" to corroborate the details of the investigation. *Id.* Garcia ended his affidavit by noting that Defendant had a criminal history and arrests for drug offenses. *Id.* On May 17, 2016 Garcia applied for and a state judge approved a warrant to search the Range Road house for heroin and other drugs, drug paraphernalia, money, records, and firearms. *Id.* The affidavit described the objects of the search at Range Road as follows:

> Heroin and other controlled substances, in any form, in an unknown quantity, including but not limited to Heroin; paraphernalia used for the packaging, distribution, weighing, smoking, cooking, possession, use, and/or sale of Heroin and other controlled substances. Records, which reflect the identities of persons found at the above-described premises, in possession of the above Heroin and/or other controlled substances. United States currency, and/or firearms, weapons, and/or other protective devices used or intended for use in the trafficking, sale, possession and/or manufacturing of any controlled substance and records which reflect the purchase of any of the above listed items or as they pertain to the above listed items, including, but not limited to: Receipts, invoices, work orders, and purchase orders.

> *Id.*

Upon review, the judge approved the warrant. Two days later, on May 19, Detective Garcia and other deputies executed the search warrant on the Range Road property. Detective Garcia recounted the search warrant's execution in a Supplemental Report Form. Govt.'s Exh. 7. According to that report, detectives found Defendant in a downstairs bedroom, standing at the foot of a bed. *Id.* After arresting Defendant and moving him to the kitchen, officers searched the

bedroom and found two loaded handguns. *Id.* One handgun lay on the ground next to the bed, appearing as if it had been thrown. *Id.* The other was tucked under a blanket on the bed close to where Defendant was found standing. *Id.* Officers also found a fully automatic rifle located in a top dresser drawer mixed together with Defendant's wallet and other personal belongings. *Id.*

A grand jury returned an indictment against Defendant charging him with one count of distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count I) and being a felon in possession of a firearm and ammunition under 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count II). *See* Doc. 2.  The Government moved to dismiss Count I, explaining in its motion that the substance Defendant sold to an undercover Drug Enforcement Agency agent tested negative for controlled substances. *See* Doc. 15. The Court granted the motion, dismissing without prejudice Count I. *See* Doc. 16.

## II.    LEGAL STANDARD

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause …." U.S. Const., amend. IV. A search warrant must be based upon probable cause, which a reviewing court determines by examining the affidavit supporting the warrant. *See United States v. Cooper*, 654 F.3d 1104, 1124 (10th Cir. 2011). The court determines the "sufficiency of the affidavit upon which a warrant is issued by looking at the totality of the circumstances and simply ensuring that the magistrate had a substantial basis for concluding that probable cause existed." *Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). Probable cause to search or seizes exists when, under the totality of the circumstances, "there is a fair probability that the contraband or evidence of a crime will be found in a particular place." *Illinois*, 462 U.S. at 238.

Courts will uphold a warrant if the issuing judge had a substantial basis for concluding that officers would find contraband during the search. *See Poolaw v. Marcantel*, 565 F.3d 721, 728-29 (10th Cir. 2009). "[P]robable cause requires a nexus between the place to be searched and the items to be seized." *United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999). The "affidavit supporting the search warrant need not contain direct evidence or personal knowledge that the items sought are located at the place to be searched;" instead, the magistrate judge may draw reasonable inferences from the information in the affidavit supporting the warrant. *Id*. *accord United States v. Biglow*, 562 F.3d 1272, 1279-80 (10th Cir. 2009) (explaining that nexus requirement may be met by magistrate judge's reasonable inferences drawn from evidence where drug suspect is likely to store contraband or on opinion of officers as to where contraband may be kept); *United States v. Sanchez*, 555 F.3d 910, 912, 914 (10th Cir. 2009) (indicating that once probable cause exists that a person is a supplier of illegal drugs, probable cause also exists to search that person's home for contraband and other evidence).

## III.     ANALYSIS

Before addressing the sufficiency of the search warrant affidavit, the Court first addresses Garcia's surveillance of Range Road, since much of Defendant's briefing and arguments at the motion to suppress hearing were devoted to whether Garcia falsified his observations of short-term traffic at Range Road. Defendant's wife leased Range Road and had the utilities in her name. She was not present when officers executed the warrant, but went into the home shortly after. She stated that the guns were not strewn about the bedroom as Garcia described, but instead were located in gun cases. Def.'s Exh. L. p. 6, lines 21-24. She also stated that Range Road did not experience the short-term traffic Garcia described. When asked whether visitors were in and out of the house, she replied that "nobody goes to my home. It's me and my children

and the person I'm dating and that's it … We don't get visitors. Friends aren't allowed over." *Id.* p. 5, lines 12-17. Defendant also points out that neighbors did not observe short-term traffic at Range Road in the manner Garcia described, nor did earlier Drug Enforcement Agency ("DEA") surveillance of Range Road indicate such activity occurred there. At the hearing, Defendant stated that, based on this and other evidence, he had carried his burden of proof to show that Detective Garcia's affidavit contained false statements concerning his surveillance of Range Road, and that under *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978), when those statements are removed the search warrant affidavit failed to establish probable cause. The Court therefore next considers whether Defendant, by a preponderance of the evidence, has carried his burden of proof under the two-prongs of *Franks*.

"Under *Franks,* a hearing on the veracity of the affidavit supporting a warrant is required if the defendant makes a substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause." *United States v. Kennedy,* 131 F.3d 1371, 1376 (10th Cir. 1997). "[T]he standards of deliberate falsehood and reckless disregard set forth in *Franks* apply to material omissions, as well as affirmative falsehoods." *Id.* "To establish reckless disregard in the presentation of information to a magistrate judge, there must exist evidence that the officer in fact entertained serious doubts as to the truth of his allegations ... and [a] factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations." *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014) The district court must suppress evidence if it finds, by a preponderance of the evidence after a hearing, that the affidavit contains false statements or material omissions that were essential to the authorizing judge's probable cause determination. *Kennedy,* 131 F.3d at 1376.

Defendant argues that Detective Garcia falsified his observations of short-term traffic at Range Road. As support, Defendant points to three neighbors' statements that they did not observe activity at Range Road in the manner Garcia described. Two neighbors, Mr. Murillo and Mrs. Murillo lived directly west of Range Road. When asked whether she saw a large volume of traffic at Range Road, Mrs. Murillo replied no.  Although she observed visitors there, she did not observe visitors with the frequency or volume Garcia described. "We used to see friends all the time and stay there and go in and stay for a while, but we never, like they say, in an hour[]," she said.  Def.'s Exh. B-2 p. 10, lines 11-12. Another neighbor, Ms. Maestes, lived southwest of Range Road. She stated that she did not observe on average three vehicles "pull in three to five minutes" and then leave. Instead she observed vehicles belonging to family and friends, and the only person she saw quickly come and go was Defendant's mother-in-law, who would sometimes pick up Defendant's children.

Defendant also points out that DEA surveillance of Range Road conducted shortly before BCSO started its own surveillance allegedly did not reveal a high volume of visitors at Range Road. In the spring of 2016, DEA agents covertly watched Defendant, surveilling him at Range Road, on the roadways of Albuquerque, and in various locations around the city. DEA agents would conduct surveillance at the same time, but would be cast about—some agents would be staked-out at Range Road, while others tailed Defendant on the roadway and then to parking lots where, unbeknownst to Defendant, he sold drugs to DEA informants. Agents orchestrated at least three controlled purchases of heroin and methamphetamine from defendant using CIs. Agents kept detailed contemporaneous notes of their observations of Defendant, and Defendant points out that those agents did not record short-term traffic at Range Road as Garcia described.

The Court concludes that Defendant has not carried his burden, by a preponderance of the evidence, to show that under the first-prong of *Franks* that Detective Garcia falsified his observations of short-term traffic at Range Road. While all neighbors stated that they did not observe a high volume of traffic at Range Road, the neighbors' statements are not strong enough to cast doubt on Detective Garcia's affidavit because all neighbors indicated that they worked outside of the home and were not consistently in the neighborhood. When asked whether she is home during the day, Ms. Maestas answered that she is self-employed and "in and out all day long." Def.'s Exh. B-1, p. 4, lines 3-7. Similarly, Mr. and Mrs. Murillo were gone to work during the day, and Mrs. Murillo stated that she went to the gym in the evening. When the Murillos were home, they spent most of their time in a part of their house that did not place them in constant view of Range Road. Because there is no evidence that the neighbors were at home during Detective Garcia's period of surveillance, the Court credits Garcia's observations over those of Defendant's neighbors.

Concerning the DEA reports, they also do not undercut Detective Garcia's observations because the bulk of those reports appear to describe surveillances of Defendant while he was *not* at Range Road. Defendant argued that DEA surveillance of Range Road on April 7, 2016 lasted approximately two hours, during which DEA agents did not observe short-term traffic. To arrive at this conclusion, Defendant's witness added together the periods of surveillance of Range Road that DEA agents recorded in their notes, and arrived at a figure of about two hours of surveillance there. However, at the hearing Defendant's witness conceded DEA agents expressly noted that that no vehicles were observed at Range Road during a period of that surveillance, suggesting that nobody was home. Thus, the DEA reports do not cast doubt on Detective

Garcia's observations since the majority of the DEA surveillance of Defendant was conducted at places other than Range Road.

The Court also concludes that Defendant has not satisfied the second-prong of *Franks*. Even if the Court excised those portions of Garcia's affidavit describing the volume of visitors to Range Road, the search warrant affidavit would still support a finding of probable cause to search there. For one, Detective Garcia had probable cause to believe that Defendant was a drug dealer. Under Tenth Circuit authority, evidence indicating a defendant is a drug dealer is alone sufficient to establish probable cause to search that defendant's residence for drugs and related evidence. *See Sanchez*, 555 F.3d at 912 ("[i]f law-enforcement officers have probable cause to believe that a person is a supplier of illicit drugs, then the officers have probable cause to search the person's home for such contraband and evidence."). Garcia had probable cause to believe that Defendant was a drug dealer based on the CI's statements to Garcia about Defendant; Garcia's listening-in on a telephone conversation between Defendant and the CI in which they discussed a heroin sale; Defendant's presence at the controlled buy, and his arrival there in a vehicle that the CI said Defendant used for drug dealing. In *Sanchez* the officer's corroboration of similar conduct by a suspect provided probable cause to believe he was a drug dealer, and therefore to search the suspect's home. *See id.* at 915. Here, too, Garcia's independent corroboration of the CI's statement that Defendant sold drugs by means of the controlled buy and his surveillance provided Detective Garcia probable cause to believe Defendant was a drug dealer, and therefore to search Range Road.

The Court concludes that Defendant has not carried his two-part burden under *Franks*, and therefore the challenged portions of Detective Garcia's affidavit should not be removed. The

Court will now turn to the sufficiency of the affidavit, considering it as a whole to determine whether it provided a substantial basis for probable cause to search Range Road.

### a.      Minimal Nexus Connected Defendant to Range Road

Defendant argues that Detective Garcia's affidavit failed to set forth sufficient facts to establish probable cause to believe the Defendant resided at Range Road. Defendant's wife leased Range Road and had the home's utilities in her name. Def.'s Exh. A-2. She stated that Defendant did not live at Range Road. Defendant's mother testified that he lived with her in Rio Rancho, and at the hearing Defendant introduced mail to his child bearing a Rio Rancho address. However Defendant's wife acknowledged that Defendant would stay nights at Range Road, although Defendant's mother testified that he seldom did so.

A search warrant affidavit need only establish "a minimally sufficient nexus," connecting the defendant to the residence searched. *United States v. Chambers*, 882 F.3d 1305, 1313 (10th Cir. 2018). "An affidavit has enough factual support to justify reliance if it establishes a *minimally sufficient nexus* between the illegal activity and the place to be searched." (emphasis in original). *Id.* at 1311. In contrast, "[a]n affidavit devoid of factual support is one that merely states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Id.* The Tenth Circuit's opinions in *Chambers* and *United States v. Villanueva*, 821 F.3d 1226 (10th Cir. 2016) and are instructive on this point. In both cases, the suspects were searched in a house that they did not own or possess. In *Villanueva* the defendant used his step-father's house for drug dealing. The court held that minimal nexus was established to search the step-father's house where the affidavit set forth cell phone data from the defendant's phone that placed him at the step-father's house while discussing criminal activity, and officers observed vehicles connected to the

defendant there. Similarly, in *Chambers* minimal nexus to search the defendant's house was met where the search warrant affidavit explained that a reliable informant told officers that two criminal suspects resided at the defendant's residence, and that one of the suspects and the defendant were brothers. In *Villanueva* and *Chambers*, despite the fact that the suspects were searched in a home that they did not own or possess, minimal nexus of criminality linked the suspects to the home searched.

Defendant is correct that nothing in Detective Garcia's affidavit indicates that he verified by means of a utilities check or the like that Defendant lived at Range Road. But his use of numerous other investigatory techniques provided probable cause to believe that Defendant resided there. *See United States v. Roach,* 582 F.3d 1192, 1204 (10th Cir.2009) (upholding search warrant affidavit because the affidavit indicated that officers used at least one investigative technique to "provide a minimal nexus connecting" the defendant to the address searched). Like the officer's affidavit in *Chambers*, Detective Garcia's affidavit described how Garcia relied on a reliable CI's statement that Defendant trafficked drugs from Range Road, he observed vehicles the CI told him Defendant used for drug dealing, and Garcia observed short-term traffic there, an activity he permissibly concluded was consistent with drug trafficking. *See United States v. Artez*, 389 F.3d 1106, 1114 (10th Cir. 2002) ("Police surveillance which show[s] an unusually high volume of visitors briefly entering and leaving [a] residence, consistent with drug trafficking[,] can also corroborate information from a confidential informant that the residence is being used to distribute narcotics."). Detective Garcia's affidavit was not required to establish that Defendant owned, leased, exclusively resided at, or had Range Road's utilities in his name to execute a search warrant there. Rather, his affidavit only had to establish a minimal nexus connecting Defendant to Range Road. His affidavit did so.

#### b. The Affidavit Established Probable Cause Linking Range Road to Unlawful Activity

Defendant argues that the warrant at issue lacked probable cause because Garcia's supporting affidavit failed to establish a nexus between Range Road and any contraband or suspected criminal activity. As Defendant correctly notes, an affidavit in support of a warrant cannot be based merely on the belief that the property owner or resident is suspected of crime. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978); *United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998) ("Probable cause to search a person's residence does not arise based solely upon probable cause that the person is guilty of a crime."). There must instead be "additional evidence" that "link[s] the person's home to the suspected criminal activity." *Rowland*, 145 F.3d at 1204. However, the quantum of that additional evidence is small—as the Tenth Circuit has explained, "little additional evidence" is needed to establish the nexus requirement. *Biglow*, 562 F.3d at 1279; *Villanueva*, 821 F.3d at 1236.

The Tenth Circuit has described what form such "additional evidence" may take. For example, evidence indicating that a suspect is a drug dealer is sufficient additional evidence to search that person's home for contraband and other evidence. *See United States v. Sparks*, 291 F.3d 683, 689-90 (10th Cir. 2002); *United States v. Reyes,* 798 F.2d 380, 382 (10th Cir.1986); *Sanchez,* 555 F.3d at 912, 914. Or, additional evidence establishing a nexus may come in the form of an officer's warrant statement that, based on his experience, evidence of drugs is likely to be found in a drug dealer's house. *See Biglow*, 562 F.3d at 1279-80 (citing *Sanchez*, 555 F.3d at 913 (officer's affidavit that his professional experience led him to believe drug dealers keep drugs and drug proceeds at their home sufficient to establish nexus)). Furthermore, "magistrate judges may rely on the opinion of law enforcement officers as to where contraband or other evidence may be kept." *Id*. In presenting a warrant affidavit to a magistrate judge "an affiant

officer need not draw an explicit connection between a suspect's activities and his residence for a Fourth Amendment nexus to exist." *See also Sanchez*, 555 F. 3d at 915 (a warrant affidavit need not contain "particular facts to support the inference that a drug trafficker keeps his supply at his residence."). In short, nexus does not require "hard evidence or personal knowledge of illegal activity link[ing] a Defendant's suspected unlawful activity to his home." *Biglow*, 562 F.3d at 1279.

Defendant argues that the Tenth Circuit and other courts have repeatedly condemned the practice of applying for a search warrant based on the suspicion that a person is guilty of a crime, and that nexus requires additional evidence linking the criminal activity to the defendant's residence. For instance, Defendant relies on the Tenth Circuit's case in *Rowland*, 145 F.3d at 1204 where the court held that police's suspicion that the defendant bought child pornography and that he would bring videotapes to his home was not enough to provide probable cause to search his home, since no evidence of criminality was observed there. Defendant similarly relies on *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005), a case where officers obtained a search warrant for the defendant's home after they found gun ammunition in his car, although there was no evidence of criminality connected to the defendant's home. Finding probable cause lacking, the court said that the affidavit contained "no facts explaining how the address was linked to [the defendant] … or the suspected criminal activity" and that "the only attempt at a connection" was the officer's claim that in his experience guns are kept at the home. *Id.* at 1230.

In *Gonzales* and *Rowland* the facts connecting suspected criminal activity to the place searched were weak; in this case they are strong. Detective Garcia executed numerous surveillances of Range Road, including a follow-up surveillance done 72 hours before he applied

for the search warrant. These surveillances revealed short-term traffic, corroborating the CI's statement that Defendant sold drugs from Range Road. Defendant's appearance at a controlled buy in a vehicle the CI said Defendant used for drug dealing, and that Garcia saw parked at Range Road further bolstered determination that Defendant sold drugs from Range Road. Garcia's affidavit simply did not rest on the mere suspicion that Defendant was a drug dealer, distinguishing this case from *Rowland*.

To the extent that Defendant argues that a high number of visitors to Range Road suggests innocent activity, and that Defendant's own "coming and going from his residence" did not establish probable cause, the Court disagrees. The Tenth Circuit has held that the exact activity Garcia witnessed—"surveillance which show[s] an unusually high volume of visitors briefly entering and leaving [a] residence"—is consistent with drug trafficking. *Artez*, 389 F.3d at 1114. The corroboration techniques employed by the police officer in *Artez* are nearly identical to those used by Garcia in this case. There, as here, the officer received a tip from a reliable informant that the defendant sold drugs from his residence. Like Garcia, the officer corroborated the information's allegations by identifying the defendant's criminal history, performing controlled buys, and surveilling the defendant's property. Also like Garcia, the officer noted that in his experience several brief visitors at the defendant's house indicated drug trafficking. These facts provided "a substantial basis for … probable cause" for drug trafficking. *Id*. at 1115. *See also United States v. Corral*, 970 F.2d 719, 727 (10th Cir. 1992) (probable cause to search defendant's home where confidential informant told officers defendant stored and sold drugs from there and police witnessed a high volume of short-term traffic at the house).

Defendant also argues that the controlled purchase did not establish a nexus to search Range Road because it occurred away from Range Road. However, under *Sanchez*, a suspected

drug dealer's participation in a covert controlled purchase furnishes additional evidence to search that suspect's residence. *See Sanchez*, 555 F.3d at 913. This is in part because it "is merely common sense that a drug supplier will keep evidence of his crimes at his home." *Sanchez*, 555 F.3d at 914. Thus, in *Sanchez* the court upheld a search warrant affidavit to search a person's house whom officers had probable cause to believe was a drug dealer although the warrant affidavit "provided no direct evidence of criminal conduct at the house." *Id.* at 912. Here, in contrast, Garcia's affidavit provided substantial evidence of criminality at Range Road based on Garcia's surveillances, the CI's allegations, and vehicles connected to Defendant observed at Range Road. The Court therefore concludes that the controlled purchase linked Defendant to suspected criminal activity at Range Road, even if the controlled purchase occurred elsewhere.

Lastly, Defendant contends that Garcia's statement that his training and experience led him to believe he witnessed drug trafficking at Range Road amounted to a guess, not probable cause. Defendant cites a number of cases in support of his position that an officer's opinion, based on his knowledge of narcotics dealers' practices, cannot by itself furnish nexus between criminal activity and the place to be searched. For example, Defendant points to the court's holding in *United States v. Schultz,* 14 F.3d 1093, 1097 (6th Cir. 1994) that an officer's affidavit statement that—based on his training alone—the defendant's safe deposit box would hold drug dealing records was insufficient to connect the safe deposit box to suspected criminal activity since no such illegal activity of the safe deposit box had been observed.

Of course, Detective Garcia did much more than simply state that his experience alone led him to believe he observed drug trafficking at Range Road. Following the CI's information that Defendant sold drugs from Range Road, he verified that Defendant had a criminal record; performed a controlled purchase using a reliable informant who told Garcia it had first-hand

knowledge Defendant sold drugs from Range Road; and surveilled that location for at least seven hours and observed short-term traffic, activity Garcia concluded was not innocent. These factors constituted "additional evidence linking [Defendant's] suspected illegal activity to his home." *Biglow,* 562 F.3d at 1279.

Moreover, the state judge was allowed to rely on Garcia's professional experience linking Defendant's activities to Range Road. *See id.* at 1279-80 ("judges may rely on the opinion of law enforcement officers as to where contraband or other evidence may be kept."); *Sanchez*, 555 F.3d at 913 (judge permissibly relied on officer's affidavit statement that in his professional experience drug dealers keep evidence of drug activity at home); *see also United States v. Harris*, 735 F.3d 1187, 1191 (10th Cir. 2013). Therefore, the Court accords deference to the judge's reliance on Garcia's professional opinion that drug trafficking activity occurred at Range Road. The Court also notes that the state judge permissibly relied on Defendant's criminal history in making her probable cause determination. *See Artez*, 389 F.3d at 1114-15 ("criminal history, combined with other factors, can support a finding of … probable cause.").

  **c.**  **The Affidavit Established the CI's Veracity, Reliability, and Basis of Knowledge**

"Warrants that rely on evidence provided by confidential informants are generally viewed with skepticism and careful scrutiny." *United States v. Manning*, 635 Fed.Appx.404, 407 (10th Cir. 2015) (quoting *Easton v. City of Boulder*, 776 F.2d 1441, 1449 (10th Cir. 1985)). Confidential informants "suffer from generally unsavory character and may only be assisting police to avoid prosecution for their own crimes," so courts may consider information received from a confidential informant, so long as other information contained in the warrant corroborate the basis of a confidential informant's knowledge, veracity, as well as his reliability. *United States v. Avery*, 295 F.3d 1158, 1167-68 (10th Cir. 2002). "However, the complete failure of an

affidavit to discuss the reliability of an informant does not automatically preclude a finding of probable cause." *Id*. at 1167-68. "[N]or is the affidavit's failure to discuss the informant's criminal history when outlining why the informant is reliable automatically fatal." *Harris*, 735 F.3d at 1192.

The Court concludes that the affidavit sufficiently established the CI's veracity. Veracity refers to "whether there is reason to believe that the informant is telling the truth, including whether he faces criminal charges or whether his statement is against his own penal interest." *United States v. Quezada-Enriquez,* 567 F.3d 1228, 1233 (10th Cir. 2009). While Defendant is correct that the affidavit made no mention of the CI's own criminal history, failure to include a CI's criminal history is not "automatically fatal." *Id.* Moreover, the affidavit contained sufficient information suggesting that the CI was telling the truth to Garcia. For one, this is not a case involving an anonymous tipster. Garcia knew the CI's identity, which "is one indicator of veracity of and reliability." *United States v. Pulliam,* 748 F.3d 967, 971, n. 2 (10th Cir. 2014). The affidavit also states that "the CI is familiar with the appearance of Narcotics and the methods by which they are sold and used," and thus put the state judge "on notice that the confidential informant was not a model citizen," when she made her probable cause determination. *Avery*, 295 F.3d at 1168. Moreover, the CI's presence at a drug buy at Range Road bolstered its credibility since an informant's statement against its own interest establishes reliability. *See United States v. Le*, 173 F.3d 1258, 1266 (10th Cir. 1999) (confidential informants' admissions to police that they purchased drugs from defendant considered indicative of reliability because it was against their penal interest). Finally, the affidavit explained that BSCO paid the CI for information. The Court concludes that this evidence sufficiently established the CI's veracity.

The Court also concludes that the affidavit sufficiently established the CI's reliability. "Reliability determinations entail inquiry into whether the informant has provided accurate information in the past." *Quezada-Enriquez*, 567 F.3d at 1233. Here, the CI had worked with law enforcement in the past, and law enforcement corroborated the CI's information in minute detail, suggesting the CI had a track record of reliability. *Cf. United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000) (reliability lacking where officer's affidavit contained no information about the informant's past reliability). Defendant argues that the CI only made a "general statement" that Defendant trafficked drugs out of Range Road, suggesting that the affidavit lacked particularity.

However, "corroborating circumstances need not be observations specific to the alleged wrongdoing supporting the warrant." *United States v. Long*, 774 F.3d 653, 659 (10th Cir. 2014). Rather, "the trustworthiness of the informant, such as a history of providing accurate (corroborated) information" can corroborate an informant's statement. *See id.* at 660 (holding that police were not required to independently corroborate a reliable informant's statement that it had observed drugs at the premises to be searched because the informant's prior accuracy provided sufficient corroboration); *Pulliam,* 748 F.3d at 971 (reliability found when informant's "tips had reliably led police to contraband in the past."). Thus, the CI's track record of providing accurate information to law enforcement sufficiently corroborated the CI's statement that it knew Defendant sold drugs from Range Road. The Court concludes that Garcia's affidavit provided sufficient indicia of the CI's reliability for the state judge to find probable cause. [1]

---

[1] Defendant relies on three cases he believes cast doubt on the CI's reliability, but these cases are inapposite because in each the informant was either untested or police conducted little or no corroboration of the confidential informant's allegations. *See United States v. Bell*, 585 F.3d 1045 (7th Cir. 2009); *United States v. Koerth*, 312 F.3d 862 (7th Cir. 2002); *United States v. Peck*, 317 F.3d 754 (7th Cir. 2003). In *Bell*, for example, the affiant officer submitted an affidavit relying on several confidential informants' statements that the defendant sold cocaine, yet the officer provided no information vouching

The affidavit also sufficiently established the CI's basis of knowledge. The Tenth Circuit has explained that, regarding an informant's basis of knowledge "a firsthand observation is entitled to greater weight than secondhand information." *Quezada–Enriquez,* 567 F.3d at 1233. Here, the CI stated that it had first-hand knowledge that Defendant sold drugs from Range Road. Admittedly, this is a "general statement" in some respects, as Defendant contends. The affidavit is murky about whether the CI bought drugs from Defendant and precisely what the CI saw and how it came to be at Range Road. Nevertheless, the CI's statement suggested that it had some "special knowledge of what goes on inside the home," and in fact Garica's surveillances corroborated the CI's allegation. *Cf. United States v. Tuter*, 240 F.3d 1292, 1297 (10th Cir. 2001) (no probable cause where the officer's search warrant affidavit "only corroborated innocent, innocuous information" from an anonymous informant describing "the residents of, and vehicles at, a particular home without having any special knowledge of what goes on inside the home."); *Danhauer*, 229 F.3d at 1006 (affidavit failed to establish probable cause where it did not reveal the informant's basis of knowledge or verify the informant's allegation that defendants manufactured methamphetamine). Although the CI's allegation concerning Range Road lack detail in some respects, the Court concludes that Garcia's surveillances and the CI's accurate track record with BCSO sufficiently corroborated the CI's statement that it had first-hand knowledge that Defendant sold drugs from Range Road. *See Quezada-Enriquez*, 567 F.3d at 1234.

---

for the informants' track record with law enforcement, and many of them were unidentified. *See Bell*, 585 F.3d at 1050-51. In *Peck* and *Koerth*, officers relied on untested and unknown informants and made virtually no attempt to independently corroborate the details of their allegations. *See Peck*, 317 F.3d at 757; *Koerth*, 312 F.3d at 867-68. Here, in contrast, Garcia explained in his affidavit that the CI had an accurate track record with law enforcement. Unlike the officers in *Peck* and *Koerth*, Garcia independently corroborated the CI's allegations by means of surveillances of Range Road and the controlled buy.

###### d.      The Search Warrant Was Particular

While "a search warrant must be sufficiently particular in describing the things to be seized to prevent a general, exploratory rummaging in a person's belongings," "[a] warrant that describes items to be seized in broad and generic terms may be valid if the description is as specific as circumstances and nature of the activity under investigation permit." *United States v. Harris*, 903 F.2d 770, 774-75 (10th Cir. 1990). Where the warrant relates to potential evidence of drug trafficking, a broad statement of items to be seized is appropriate under the circumstances. *See, e.g.*, *United States v. Emmons*, 24 F.3d 1210, 1216 (10th Cir. 1994); *United States v. Wicks,* 995 F.2d 964, 973 (10th Cir. 1993) (holding a warrant valid where it contained "boilerplate" language and "where the subject of the search was a drug trafficking or drug dealing business, and where circumstances permitted only a more general listing of the items to be seized.").

Defendant argues that the search warrant affidavit was not particular because it made a "passing reference" to a search for firearms without explaining how firearms would be evidence of a crime. But the affidavit made more than a passing reference. It identified "any firearms, weapons, and/or other protective devices," as objects to be searched. This description was as specific as it needed to be. To the extent that Defendant argues that the affidavit was not particular because it did not link the firearms to Defendant, the Court disagrees. Detective Garcia knew that Defendant had a criminal history, and a search of that history would show him that any guns in Defendant's possession would be contraband because he was a felon. *See Pulliam*, 748 F.3d at 972.

Defendant additionally argues that, by cutting and pasting the same text in multiple, unrelated affidavits, Detective Garcia presented material omissions to the state judge. However, "[an] affidavit is [not] invalid to support a search warrant simply because it ha[s] a preprinted

format." *United States v. Garcia*, 528 F.3d 481, 486 (7th Cir. 2008). "[T]he use of such language does not render an affidavit inadequate where the statements are true as to the search in question and the affidavit is otherwise sufficiently particularized." *United States v. Sadlowski,* No. CR 16-847 MCA, 2017 WL 5186360 *7 (D.N.M. Nov. 8, 2017) (citing *United States v. Norris*, 640 F.3d 295, 301–02 (7th Cir. 2011) (where officer "admitted that he used the 'cut and paste' function on his computer to write certain paragraphs of the affidavit" but also "testified that "[he] made sure that the events that [he] changed were correct and accurate," "these actions ... [do not] call[ ] into question the veracity of his representations to the state court.")). "As long as there is sufficient information to provide probable cause for the search, the fact that the affidavit is partially pre-printed is irrelevant." *United States v. Romo,* 914 F.2d 889, 898 (7th Cir. 1990). The fact that a search warrant affidavit copies portions of a recycled affidavit is irrelevant "[a]s long as there is sufficient information to provide probable cause for the search." *United States v. Weaver,* 99 F.3d 1372, 1378 (6th Cir.1996); *see also United States v. Moore,* 661 F.3d 309, 312 (6th Cir.2011) (upholding boilerplate search warrant affidavit where an unnamed confidential informant had witnessed the defendant engaging in drug transactions).

Defendant points to two other search warrants drafted by Detective Garcia that contain nearly identical descriptions of his surveillance observations as those described for the Range Road search warrant affidavit. In all three, Detective Garcia stated that "[w]ithin each one (1) hour block I observed several vehicles enter the property" and that the visitors would stay "usually 3 to 5 minutes … not brining children or packages of any kind." Despite the fact that Detective Garcia's search warrant affidavit contains boilerplate language, it also sufficiently presented specific facts supporting a particularized showing of probable cause. It noted the presence of vehicles at Range Road the CI said were used by Defendant, stated that the CI had

first-hand knowledge that Defendant sold drugs from there, recounted in detail the controlled buy, and noted unique surveillance time periods. These details make the affidavit sufficiently particularized to Range Road.

> **e.     Authority to Search Extended to Where the Objects of the Search Could be Found**

"A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found …." *United States v. Ross*, 456 U.S. 798, 820–21, (1982). "Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found." *Id*. at 821. In this case, given the search warrant's authorization to find "controlled substances, in any form, in an unknown quantity, … records … United States currency, and/or any firearms, weapons, and/or other protective devices," officers would be justified in opening a drawer, a gun case, or looking through a closet. They were looking for items that could be small, such as drugs of any quantity, and money or documents linked to drug transactions, and larger items such as firearms. Authorization therefore to search Range Road for these items justified the opening of doors, closets, drawers, cases, and other places where the listed items could be hidden.

**IT IS THEREFORE ORDERED** that Defendant's Amended Motion to Suppress Evidence **[Doc. 37]** is **DENIED.**


**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE